IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DISTRICT COURT OF ST. THOMAS/ST. JOHN
***********************

| | |
|---|---|
| **LEANN JOSEPH,** ) | **CIVIL NO. 2016/_____** |
| ) | |
| **Plaintiff,** ) | |
| ) | **ACTION FOR DISCRIMINATION** |
| **vs** ) | **BASED ON GENDER;** |
| ) | **VIOLATION OF THE** |
| ) | **VIRGIN ISLANDS CIVIL RIGHTS** |
| **VIRGIN ISLANDS TELEPHONE** ) | **ACT; DEFAMATION PER SE** |
| **CORPORATION d/b/a** ) | |
| **INNOVATIVE TELEPHONE AND** ) | |
| **BERNARD DOUGLAS, IN HIS** ) | |
| **INDIVIDUAL CAPACITY,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendants.** ) | |
| _____) | |

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, **LEANN JOSEPH** ("**Ms. Joseph**"), by and through her undersigned counsel, **LAW OFFICES OF KARIN A. BENTZ, P.C.** ( Karin A. Bentz, Esq.) and for her Verified Complaint against the Defendants, **VIRGIN ISLANDS TELEPHONE CORPORATION d/b/a INNOVATIVE TELEPHONE** ("**Innovative**"), and **BERNARD DOUGLAS** ("**Douglas**"), in his individual capacity.

## PRELIMINARY STATEMENT

1. This action is brought by Plaintiff, Leann Joseph (hereinafter "**Ms. Joseph**"), a former employee of the Defendant, Innovative, against her superior, Defendant Douglas, for violation of Ms. Joseph's rights under Title VII of the Civil Rights Act of 1964, as amended (hereinafter "**Title VII**") and 10 V.I.C. § 64a of the Virgin Islands Sexual Harassment Act. The action is also brought for negligent supervision and training and defamation per se.

2. Ms. Joseph seeks damages to redress the harm caused by Defendants.

## JURISDICTION AND VENUE

3.   This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights act of 1991, Pub. L. No. 102-166).  Jurisdiction of this Court is invoked pursuant to 42 U.S.C. §2000e-5(f); 28 U.S.C. §1332;  28 U.S.C. §1343 (a)(4) and 28 U.S.C. §§ 2201 and 2202.  The Jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 42 U.S.C. §§ 2000e to 2000e-17, providing for relief against racial, religious, national origin, and sex discrimination in employment.   This Court may also exercise pendant jurisdiction over Ms. Joseph's Territorial law claims arising under the common law and statutes of the Territory of the Virgin Islands, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. §1367.

4.   Venue is proper in the United States District Court of the Virgin Islands pursuant to 28 U.S.C. Section 1391(b) wherein Ms. Joseph resides, all Defendants regularly conduct business, and where all the wrongful conduct occurred.

## PROCEDURAL BACKGROUND

5.   Ms. Joseph filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ( hereinafter **"EEOC"**).

6.   Ms. Joseph received a Notice of Right to Sue from the EEOC, dated May 10, 2016 (the **"Notice"**), with respect to the herein charges of discrimination.  A copy of the Notice is attached hereto as EXHIBIT A.

7.   This Action is being commenced within ninety (90) days of receipt of the Notice.

## PARTIES

8.   At all relevant times hereto, Plaintiff Leann Joseph ("**Ms. Joseph**") was a female citizen and domiciliary of St. Thomas, Virgin Islands.

9.   At all relevant times hereto, Defendant Virgin Islands Telephone Corporation d/b/a Innovative Telephone ("**Innovative**") is a corporation organized and existing under the laws

of the Territory of the U.S. Virgin Islands and maintains its principal place of business on St. Thomas, U.S. Virgin Islands.

10. Upon information and belief, at all relevant times hereto, Defendant Douglas was a citizen and domiciliary of St. Thomas, Virgin Islands. Defendant Douglas served as a Supervisor and Manager at Innovative.  Specifically, he served as a Supervisor of Facilities and Fleet and in or about February 2015, he became a Manager of Fleet.

11. At all relevant times hereto, Defendant Douglas' employment and position at Innovative was superior to Ms. Joseph's position as an Executive Administrative Assistant.

12. At all relevant times hereto, Douglas had the authority to direct Ms. Joseph's work and would do so from time to time.

13. At all relevant times hereto, Ms. Joseph was an exemplary employee of Innovative.

## STATEMENT OF FACTS

14. Ms. Joseph is a female, born in the United States Virgin Islands, and therefore, a member of a protected class.

15. Ms. Joseph holds a bachelor's degree in Business Administration with a concentration in Finance, and a master's degree in Finance.

16. From in or around August 2013 through March 6, 2015, the date of her resignation, Ms. Joseph served as an Executive Administrative Assistant for Innovative.

17. As an Executive Administrative Assistant, Ms. Joseph was responsible for, among other things, providing support to Chief Technology Officer/Senior Vice President of Network Engineering and Operations as related to communications, calendar management, presentations, meetings and project support.

18. Ms. Joseph's salary at the time of her resignation was $47,000.

19. At all relevant times herein, Ms. Joseph reported directly to Matthew Muckelbauer ("**Muckelbauer**"), Innovative's Vice President of Network Operations and Engineering, and, upon information and belief, at all relevant times an employee of Innovative.

20. As an Executive Administrative Assistant, Ms. Joseph performed very well in all areas, including maintaining a very good relationship with her fellow employees.

21. Ms. Joseph received favorable evaluations and recommendations from her superiors.

22. In or about September 2014, two male employees of Innovative, "Chico" and Methuselah St. Luce, approached Ms. Joseph and informed her that Defendant Douglas had been making sexual jokes about Ms. Joseph and expressing his jealousy that other male employees had helped Ms. Joseph fix her car.

23. Ms. Joseph was confused and concerned about these remarks, as she has never had an intimate or sexual relationship with Defendant Douglas.

24. One week later, Defendant Douglas stopped by Ms. Joseph's office purportedly to drop off invoices, at which time he stated, in an aggressive tone, that he did not like other male employees helping her with her car trouble.

25. Ms. Joseph did not respond to Defendant Douglas' strange and aggressive comments.

26. On November 28, 2014, Ms. Joseph confronted Defendant Douglas about his inappropriate behavior and his aggressiveness towards Ms. Joseph's direct supervisor, Muckelbauer, who allowed Ms. Joseph to use a company vehicle.

27. Defendant Douglas was upset that Muckelbauer gave Ms. Joseph the vehicle to use while Muckelbauer was off island.

28. Ms. Joseph demanded that Douglas' jealous and antagonizing behavior stop immediately.

29. On December 9, 2014, Ms. Joseph called Pam Schaard ("**Schaard**"), Innovative's Senior Vice President of Human Resources and Information Technology, to report Defendant Douglas' harassment.

30. Upon information and belief, at all relevant times, Schaard was an employee of Innovative.

31. Schaard advised Ms. Joseph to stop by her office the following day.

32. However, when Ms. Joseph came to Schaard's office on December 10, Schaard was not there.

33. Ms. Joseph sent a follow-up email to Schaard that day at 10:34 a.m., which stated that

Ms. Joseph had stopped by and wished to discuss the increasingly uncomfortable situation with Defendant Douglas.

34. In her email, Ms. Joseph asked that Schaard keep the matter confidential, as she feared that other members of the Human Resources Department were friends with Defendant Douglas.

35. Schaard never responded to Ms. Joseph's email request to meet to discuss Defendant Douglas' harassment, thus allowing his harassment to continue unabated.

36. Douglas' harassment caused Ms. Joseph to lose focus at work and to lose sleep at night, thus detrimentally impacting her ability to perform her duties.

37. In mid-December, 2014, while Ms. Joseph was in Defendant Douglas' office to discuss pending work-related matters, Douglas made crude sexual remarks about Ms. Joseph's buttocks. Specifically, Douglas, with a creepy look on his face, stated that he had been staring at Ms. Joseph's buttocks and, after invading her personal space by coming very close to her, wondered aloud why her buttocks had been increasing in size.

38. His close proximity made Ms. Joseph feel physically threatened.

39. Revolted and uncomfortable, Ms. Joseph immediately left Defendant Douglas' office.

40. Approximately one week later, while traveling alone with Defendant Douglas in Defendant Douglas' assigned company vehicle for a work-related matter, Defendant Douglas began peppering Ms. Joseph with a series of sexually perverted and aggressive questions, including: (1) "How do you have sex?"; (2) "What do you like to do when you have sex?"; (3) "How do you have sex with your boyfriend?"; (4) "How do you survive with your boyfriend being away from you for so long?"; and (5) "What do you do to satisfy yourself?" In fact, Defendant Douglas asked Ms. Joesph if she would have sex with him or a man his age.

41. Ms. Joseph replied that she would not have sex with Mr. Douglas, stating that he was old enough to be her father.

42. To make matters worse, Defendant Douglas then proceeded to describe his sex life with his wife and what he did to please her sexually.

43. Defendant Douglas eventually stopped asking Ms. Joseph questions about her sex life only after her she became visibly upset and insisted that he stop.

44. In January 2015, Defendant Douglas sent several text messages to Ms. Joseph at 1:00 a.m. asking her to join him for dinner and dancing at Crown Bay, at which time his line of questioning took a perverse turn, when he asked, "What kind of panties are you wearing?"

45. On February 15, 2015, the windshield of a company vehicle driven by Ms. Joseph became cracked through no fault of Ms. Joseph.

46. On February 17, 2015, the following business day, Ms. Joseph informed Defendant Douglas and Muckelbauer, among other people, about the cracked windshield.

47. Ms. Joseph offered to pay for the damage and was rebuffed by Muckelbauer as it was clear that the cracked windshield was not caused by her actions. Ms. Joseph did not receive any reprimand for the broken windshield.

48. On February 19, 2015, Defendant Douglas and Muckelbauer assured Ms. Joseph that Innovative would assume the cost of fixing the windshield.

49. The following day, Defendant Douglas approached Ms. Joseph and expressed his displeasure that the newly hired facilities manager, Andrew Remeselnik, would be working closely with her.

50. Immediately thereafter, Mr. Remeselnik's job was actively sabotaged by Defendant Douglas, which included Defendant Douglas (1) slashing the roof and causing leaks within the facility, and (2) removing labels on over 100 keys to be used by Mr. Remeselnik throughout Innovative's facility.

51. Defendant Douglas' actions in this regard were solely to cause Mr. Remeselnik to lose his job, thereby getting him away from Ms. Joseph.

52. Ms. Joseph reported Defendant Douglas' actions to Muckelbauer in a face-to-face meeting and nothing was done in response. Instead, Muckelbauer thought it was funny, laughed about it, and told Ms. Joseph that "Dougie has the hots for you."

53. On February 20, 2015, Ms. Joseph sent an email to Schaard asking to meet to discuss

Defendant Douglas' ongoing harassment.

54. Schaard responded to Ms. Joseph's email by stating, "[t]here is a lot going on right now and unfortunately, this is not of my top priorities."

55. After Schaard stated that Defendant Douglas' actions toward Ms. Joseph were not her priority, she took no further action.

56. Immediately thereafter, Eling Joseph (no relation to Ms. Joseph), an Innovative employee advised Ms. Joseph of ugly false rumors started by Defendant Douglas, including that Ms. Joseph was having an affair with her boss, Muckelbauer, and that he was paying Ms. Joseph's rent.

57. On February 23, 2015, after learning of these completely false rumors, Ms. Joseph confronted Defendant Douglas who denied stating the rumors.

58. On February 27, 2015, Jennifer Matarangas-King Innovative's Vice President of Public Relations and Marketing first learned of, and became extremely angry about, the cracked windshield on Ms. Joseph's company vehicle.

59. Ms. Matarangas-King was advised by Craig Nicastro that Muckelbauer, the Senior Vice President of the Car Fleet at the time, was aware of the cracked windshield and that Innovative had agreed to assume the cost of repairs.

60. Just prior to entering her human resources interview on March 5, 2015 to discuss the cracked windshield, Ms. Joseph spoke to Sonny Sookraj, an Innovative employee.

61. Mr. Sookraj told Ms. Joseph that Defendant Douglas made numerous false statements to Innovative's human resources department that could jeopardize Ms. Joseph's employment and possibly get her fired.

62. During her interview, Latoya Browne, Innovative's Human Resources Operations Manager, and Kali Richardson, Innovative's Labor Relations Manager, informed Ms. Joseph that Defendant Douglas' statements to the human resources department included the following: (1) Ms. Joseph initially approached Defendant Douglas to use the vehicle which had been damaged, and the request was denied by Douglas; (2) Ms. Joseph and Mr. Sookraj went behind Defendant Douglas' and Muckelbauer's back to use the vehicle

without obtaining the proper permission; and (3) Ms. Joseph attempted to cover up the damage to the vehicle's windshield.  All of these statements are completely and knowingly false.

63. Ms. Joseph immediately informed Ms. Brown and Ms. Richardson that the statements made by Defendant Douglas were false.

64. Ms. Joseph subsequently reported Defendant Douglas' false statements to Schaard, who, once again, dismissed Ms. Joseph's concerns, and advised Ms. Joseph to try to move to another department within Innovative if she wasn't comfortable working with Defendant Douglas.

65. Upon returning to her office, Ms. Joseph suffered an anxiety attack with severe chest pains and a feeling as though she was going to faint.

66. Upon returning home, Ms. Joseph received phone calls from Andrew Remeselnik and Eling Joseph, and personally spoke with Methuselah St. Luce, all employees of Innovative, that Douglas was tarnishing her reputation at Innovative as a competent worker, including that Ms. Joseph was having an affair with her boss, Muckelbauer, and that Muckelbauer was paying Ms. Joseph's rent.

67. On March 6, 2015, due to the campaign of constant, merciless harassment, and Innovative's willful and malicious blindness to Ms. Joseph's plight, she resigned from Innovative for health reasons.

68. Even after her resignation, Defendant Douglas continued to spread demonstrably false rumors about Ms. Joseph, including without limitation the statements set forth above.

69. On March 11, 2015, as a result of Innovative's intentional complicity in Defendant Douglas' harassment, whether sexual in nature or otherwise, Ms. Joseph was rushed to the hospital with another anxiety attack which caused Ms. Joseph to suffer severe emotional and physical pain, including dizziness, a racing heart, fear of dying, chest pains and shortness of breath.  Ms. Joseph suffers from a heightened sensitivity to stress as a result of the incidents and related depression she endured during her employment at Innovative.

70. Defendant Douglas' harassment did not stop with Ms. Joseph, and extended to Ms. Joseph's father, an employee at Innovative for over thirty years.

71. On March 12, 2015, Defendant Douglas confronted Ms. Joseph's father purportedly to speak to him about the events that transpired prior to Ms. Joseph's resignation from Innovative.

72. Ms. Joseph's father refused to speak Defendant Douglas.

73. Ms. Joseph was upset about Defendant Douglas' actions and Ms. Joseph immediately contacted Ms. Brown in Innovative's Human Resources Department.

74. Ms. Brown assured Ms. Joseph that should would inform Muckelbauer and Schaard of the incident.

75. Despite following up repeatedly, Ms. Joseph never heard back from anyone at Innovative regarding the incident involving her father.

76. Recently, Ms. Joseph was diagnosed with Trichotillomania, an obsessive–compulsive spectrum disorder characterized by the compulsive urge to pull out one's hair, leading to hair loss and balding, distress, and social or functional impairment.

## COUNT I: SEX DISCRIMINATION
### VIOLATION OF TITLE VII: HOSTILE WORK ENVIRONMENT
#### (All Defendants)

77. Ms. Joseph incorporates all preceding paragraphs herein by reference as though fully restated wholly, in this Count.

78. At all relevant times herein, Defendant Douglas was Ms. Joseph's superior who had the authority to direct her work and cause her to be disciplined, thus rendering Innovative vicariously liable for Defendant Douglas' sexual harassment of, and discrimination against, Ms. Joseph under Title VII of the Civil Rights Act of 1964.

79. Ms. Joseph was subjected to regular, pervasive, severe and unwanted sexual advances by Defendant Douglas, including requests for sexual favors, and verbal or physical conduct of a sexual nature intentionally and purposefully inflicted upon Ms. Joseph because she was a woman.

80. Defendant Douglas' pervasive sexual harassment detrimentally affected Ms. Joseph, including by causing her to lose focus at work, lose sleep at night, feel physically threatened at work, and ultimately causing Ms. Joseph to resign from her employment and to suffer from repeated mentally and physically painful anxiety attacks.

81. Innovative had actual and constructive notice of Defendant Douglas' discriminatory conduct and failed to take any remedial action to stop it.

82. Ms. Joseph seeks all remedies and damages permitted under Title VII, including back pay, damages for lost benefits (including retirement and tuition benefits) and prospective future employment, damages for prospective harm in her present position, compensatory damages for emotional pain and suffering, punitive damages, injunctive and declaratory relief, and payment of her litigation costs, including reasonable attorneys' fees and costs, plus pre-judgment and post-judgment interest.

## COUNT II: VIOLATION OF THE VIRGIN ISLANDS CIVIL RIGHTS STATUTE
### (All Defendants)

83. Ms. Joseph incorporates all preceding paragraphs herein by reference as though fully restated wholly, in this Count.

84. Starting on or about September 2014, Ms. Joseph began working in a hostile working environment based on her sex.

85. Defendant Innovative is an employer as defined by Section 64a of Title 10 of the Virgin Islands Civil Rights Act.

86. Ms. Joseph is an employee as defined by Section 64a of Title 10 of the Virgin Islands Civil Rights Act.

87. At all relevant times herein, Defendant Douglas was Ms. Joseph's superior who had the authority to direct her work and cause her to be disciplined, thus rendering Innovative vicariously liable for Douglas' sexual harassment of Ms. Joseph.

88. From September 2014 until Ms. Joseph resigned in March 2015, Defendant Douglas engaged in severe and pervasive unwanted acts of sexual harassment because Ms. Joseph was a woman. Defendant Douglas' actions included unwanted sexual advances, requests for sexual

favors, and verbal or physical conduct of a sexual nature.

89. Defendant Douglas' sexual harassment of Ms. Joseph and Innovative's refusal to stop it had the effect of creating an intimidating, hostile, and offensive working environment that interfered with Ms. Joseph's work performance, including, but not limited to, causing her to lose focus at work, lose sleep at night, feel physically threatened at work, ultimately causing Ms. Joseph to resign from her employment and to suffer from repeated mentally and physically painful anxiety attacks.

90. Innovative had actual and constructive notice of Defendant Douglas' discriminatory conduct and failed to take any remedial action to stop it.

91. As a direct and proximate result of the Defendants' conduct, Ms. Joseph has suffered damages, including but not limited to loss of past and future wages, retirement benefits and other fringe benefits, as well as severe emotional distress and physical distress for which Defendants are liable.

## COUNT III: NEGLIGENT SUPERVISION/HIRING AND RETENTION
### (Defendant: Innovative)

92. Ms. Joseph incorporates all preceding paragraphs herein by reference as though fully restated wholly, in this Count.

93. At all relevant times, Ms. Joseph was an employee of Innovative.

94. Upon information and belief, at all relevant times, Schaard and Muckelbauer were employees of Innovative.

95. Upon information and belief, at all relevant times, Defendant Innovative had actual and constructive knowledge of Defendant Douglas', Muckelbauer's, and Schaard's unfitness, incompetence or dangerous attributes and could reasonably have foreseen that such qualities created a risk of harm to other persons, insofar as they were not properly trained regarding both federal and territorial anti-discriminatory laws and regulations before they were hired.

96. Despite Innovative's knowledge of Defendants Douglas', Muckelbauer's and Schaard's unfitness, incompetence or dangerous attributes, Innovative negligently hired and/or retained them.

97. Innovative owed Ms. Joseph a duty to ensure that Defendant Douglas, Muckelbauer and Schaard were properly trained regarding both federal and territorial anti-discriminatory laws and regulations before they were hired and to ensure that Defendant Douglas, Schaard and Muckelbauer adhered to federal and territorial laws prohibiting discrimination in the workplace and Innovative's own rules and policies while they were employed by Innovative.

98. Innovative had actual and constructive notice of Defendant Douglas' discriminatory conduct and failed to take any remedial action to stop it.

99. Innovative's negligent supervision of Defendant Douglas, Schaard and Muckelbauer resulted in the discriminatory acts described herein based on Ms. Joseph's sex.

100. Notwithstanding this duty and its prior knowledge, Innovative chose to do nothing and allowed Defendants Douglas to continue his unlawful conduct towards Ms. Joseph.

101. As a proximate result of Innovative's negligence in hiring, supervising and/or retaining Defendant Douglas, Ms. Joseph has suffered and continues to suffer emotional pain, economic pain, and other general and specific damages for which Innovative is liable.

## COUNT IV: DEFAMATION PER SE
### (Defendant: Douglas)

102. Ms. Joseph incorporates all preceding paragraphs herein by reference as though fully restated wholly, in this Count.

103. The following knowingly false and defamatory statements were made and published by Douglas to various employees of Innovative, all of whom knew and worked closely with Ms. Joseph: (1) Ms. Joseph was having an affair with her boss, Muckelbauer, and that he was paying Ms. Joseph's rent; (2) after Defendant Douglas, as Ms. Joseph's superior, denied Ms. Joseph's request to use a company vehicle, Ms. Joseph and Sonny Sookraj went behind Defendant Douglas' and Muckelbauer's back to use the vehicle without obtaining the proper permission; and (3) Ms. Joseph attempted to cover up damage to a company vehicle's windshield.

104. Defendant Douglas knew that, at the time each of these defamatory statements were made, they were completely false.

105. Defendant Douglas is liable to Ms. Joseph for the defamatory statements he published to third parties, as the knowingly false statements imputes to Ms. Joseph (1) a matter incompatible with her business, trade, profession, or office, and (2) serious sexual misconduct.

106. As a result of Defendant Douglas' acts as aforesaid, Ms. Joseph has suffered and will continue to suffer damages and losses for which Defendant Douglas is liable.

**WHEREFORE THE PREMISES CONSIDERED, PLAINTIFF PRAYS**

A. That this Court declare that by their acts and omissions and practices, Defendants have violated rights secured to Ms. Joseph under Title VII and other public laws and policies of the United States and the Territory of the Virgin Islands.

B. That the Court grants compensatory damages, consequential damages, and punitive damages, and prejudgment interest thereon at the statutory rate.

C. That the Court grants Ms. Joseph disbursement, costs and attorneys' fees incurred in bringing this action.

D. That the Court grant additional relief as the Court deems just and proper

**JURY TRIAL DEMANDED ON ALL ISSUES.**

Respectfully submitted,

**LAW OFFICES OF KARIN A. BENTZ, P.C.**

Dated: August 8, 2016

/s/ Karin A. Bentz
**KARIN A. BENTZ, ESQ., VI Bar No. 413**
32B Dronningens Gade, Suite XB
5332 Raadets Gade, Suite 3
St. Thomas, Virgin Islands 00802-6309
Telephone: 340-774-2669
Telecopier: 340-774-2665
Email: kbentz@virginlaw.com

## VERIFICATION

I, **Leann Joseph**, having first been sworn under oath and according to law, depose and state that:

1.      I am the Plaintiff herein.

2.      I have read the foregoing Verified Complaint and know the contents therein to be true to my knowledge and belief.

Date: August 8, 2016

<u>                             </u>
Leann Joseph

**SUBSCRIBED AND SWORN TO BEFORE ME** on this 8th day of August 2016.



NOTARY PUBLIC
My Commission Expires: 4/24/16

```
ERIC BAYNES
My Commission #: NP-36-14
Expires: April 24, 2018
St. Thomas/St. John, U.S.V.I.
```